Tucker, P.
Among the errors assigned in this case, is the shortness of time allowed by the decree for redemption; the regular allowance, according to the practice of the court, it is contended, being six months. Although, in the view I have taken of this point, it would be unnecessary to give an opinion as to the general rule, yet, as it relates to the every day’s practice of the court, I think it not amiss to say that .1 *312 know no suck inflexible rule in our courts. According to my recollections, both at the time I was at the bar where Chancellor Carr presided, and when I afferwards succeeded him, the court adopted and pursued the opinion of Chancellor Kent, in Perine v. Dunn, 4 Johns. C. R., 141, regarding it as a matter of sound discretion to fix the period of redemption according to the circumstances of the case. I am very sure there must have been cases in that circuit, where the time allowed was even less than three months; and it is probable the same practice continues. I should be unwilling, therefore, to lay down any inflexible rule on the-subject, as it might lead to mischiet, and is in no wise essential to justice. On the contrary, I think it better that the matter should be left to the sound discretion of the court, and that we should presume the discretion has been properly exercised, where no objection has been made in the court below, and no extension asked for of the time allowed, for redemption. Upon such an application, if refused, the reasons of the court would appear, and the appellate tribunal could then decide whether the discretion had been abused. In the present case, no objection has been made, and the decree, therefore, should not be disturbed.
A second ground of complaint is, if well founded, of much greater importance. It is said that no sale should have been decreed, unless the profits were inadequate to indemnify the mortgagees. .
During the argument, it struck me that the conveyance partook somewhat of the character of a welsh mortgage, or of the vivum vadium. I am satisfied I was mistaken. In the welsh mortgage, the rents and profits go against the interest only, (Ooote on Mort., 9,) which would not be the effect of the clause in this deed. And as to the vivum vadium, that is a conveyance to the mortgagee to hold until, out of the rents *313 and profits, or otherwise, his principle and interest are paid. But here there is an absolute conveyance of the fee, with a defeazance in case of payment; which is precisely of the character of a mortgage. And the clause providing for the entry of the mortgagees after default, is no more than that which is now inserted in many mortgages, except that the words, “ for their indemnity,” have been unnecessarily added in this. See 3 Powell on Mort., 1120 a, 1116 a, for the form. The effect of this clause, then, is not to limit, the mortgagees to the perception of the rents and profits for their indemnity, but merely to invest them, in terms, with the right to enter and hold the premises until redemption. Hence it follows, that the right of the mortgagees to foreclose, cannot be impaired by it, nor can •there be any error in decreeing the foreclosure, whether the profits were or were not adequate, in a succession of years, to indemnify the mortgagees.
The other error assigned is, if well founded, vital to the plaintiffs’ demand. It presents a question of great importance, and of the first impression here. It is contended that the mortgage was void as to the feme, for want of that explanation of its nature which the act of assembly requires. • The certificate of the privy examination, it is admitted, is in due form; but it is alleged that that certificate is false in the point referred to; and the depositions of the justices have been taken to prove its falsity. Let us, then, consider the character of the act, and the meaning and intent of the statute which prescribes it, in order to discover whether dt is susceptible of contradiction by any proof whatever.
By the common law, a married woman could not, by joining her husband in a deed, bar herself, or those claiming under her, of her own estate. In process of time, however, fines were adapted to this end, and by them the rights of a wife might successfully be passed. *314 5 Cruise’s Dig. 115, 116. But to prevent imposition upon her, it was at length provided by a statute, that where a feme covert was one of the parties to a fine, s^e should be privily examined, and if she refused her assent, the fine should not be levied. Ibid. This proceeding is the prototype of our privy examination. But though the privy examination was positively enjoined by statute, yet, if a feme was allowed to acknowledge a fine without examination, it nevertheless bound her, and could not be reversed; for she could not contradict the record, which set forth her examination. Ibid.
According to the British system of jurisprudence, then, - we see that certain safeguards were thrown around the feme for her protection; but we also see that if those safeguards failed, she was left without a remedy; except in cases of fraud in the'conusee, whom equity would, in such a case, consider a trustee for her.
In Virginia, as a substitute for the fine, a deed, accompanied by a privy examination of the feme, has been adopted. This privy examination, it is provided, may be taken either before a court of record, or before two justices of the peace. In both cases the same identical requisitions exist. In both it is required that the deed be shewn and explained to her, and that she shall acknowledge it as her act and deed, and declare that she had freely and willingly signed, sealed and delivered it. Where this examination has been made in court, it must be conceded that it is altogether conclusive, and that no allegation can be admitted to contradict the entry upon the record, however much that may be at variance with the, real fact. Though the. judge or justice who examined her may have disregarded every requisition of the statute, yet, when the term is once ended, the truth of the record never can be questioned, but the examination must be taken to have been in truth what by the record it appears to *315 have been. Thus, then, it would seem that like our ancestors, we have, in this provision, been content to throw around the feme covert a certain safeguard, which, nevertheless, may fail to fulfil the-just and benevolent intention of the law-giver. We have not indulged the vain expectation that we have provided against every possible mischief, since we know that perfection is not attainable in human legislation. But we rest upon the assurance, that with these guards, the rights of married women are substantially secured, and that there is much less danger of their suffering by the ignorance or corruption of the courts, than there would be of shaking all confidence in the titles of the country, if femes covert were permitted, at the remotest period, to call in question what has been solemnly recorded in a court of justice.
The second mode of privy examination prescribed by law, is by two justices of the peace; and it seems to be supposed, that because it is a matter in pais, the certificate of the justices may be directly contradicted, and the deed vacated by the testimony of witnesses, and even by the depositions of the justices themselves. Such a position is at variance, I take it, with the spirit and object of the law, and also with the terms of the law itself.
We have already seen that the object of the law was to provide a substitute for the proceeding by fine, whereby the rights of the feme on the one hand might be fenced around, and a sure, indefeasible and unquestionable transfer of her right secured on the other. While the legislature were protecting the wife, can it be believed that they had no regard to the importance of giving confidence to the title ? Can they have been insensible to the ruinous consequences to the prosperity of any commonwealth, of doubt and uncertainty as to land titles? Could they have conceived of any measure more calculated to create these doubts, *316 than the liberty, at' any remote period, of alleging and proving that the magistrates’certificate is false? "When they have entrusted the performance of this duty to a Magistracy in whom is even the power of life and death; when they have prescribed the mode of fulfilling it, with a minuteness that one might think would have defied mistake; when they have commanded the act, when completed, to be placed upon the public records; when the act itself is substituted (merely for convenience) for one which, as we have seen, never can be contradicted—can we believe that it ever was contemplated to permit this solemn certificate to be falsified by the testimony oí witnesses, and even by that of the very magistrates who, under the sanction of their official oaths, have signed and returned the certificate of privy examination? I cannot think it. If such be the law, who will ever resort to this mode of privy examination ? Who will not insist upon the examination before the court, however inconvenient to the parties, or onerous to the courts of justice? Who will sit down content with a title, in all respects complete upon its face, when, upon the death of his vendor, his widow and her magistrates may undo what they have solemnly done by their act, and without the possibility of contradiction, since they alone are permitted to be privies to it? With these startling considerations presenting themselves in opposition to the doctrine, now for the first time, I believe, advanced in our courts, it ceases to be a wonder that, for upwards of a century, no one has ever been found sufficiently adventurous to insist upon such a construction of our statutes.
But if the door be.once opened to contradictions of the magistrates’ certificates, where is the point at which» we shall stop? The.writing must be explained; and if the certificate that it was explained can be contradicted, what shall prevent enquiry, whether it was *317 truly explained? For, if not truly explained, the condition of the feme is surely not better than if the deed were not explained at all. And if, in the complicated provisions of a settlement, the justices become entangled, what shall prevent the proof by the feme, that she has in truth executed a deed altogether different in effect from the explanations which were given to her of that which she had signed? And if these enquiries are to be permitted, and that too when the feme has lain by, during the lifetime of her husband, and rakes up these objections at a remote day, of what value will your privy examinations be? "Who will take a title depending upon, or which can be traced through them? Ho one. To me, indeed, it seems that the demon of mischief could not suggest a notion better calculated to throw all things, in relation to titles, into their original chaos, than the establishment of the principle here contended for.
"With these preliminary views of the spirit and meaning of the statute, let us look to its terms. The first part of the clause provides, that if the wife, being examined, shall acknowledge the deed, and such examination and acknowledgment be certified, and such certificate be offered for record, it shall be recorded. Here the clause loses the hypothetical if, and proceeds: “And when the privy examination, aeknowlment and declaration of a married woman shall have been so taken in court, and entered of record, or certified by two magistrates, and delivered to the clerk to be recorded, and the deed also shall have been duly acknowledged or.proven as to the husband, and delivered to the clerk to be recorded, pursuant to the directions of this act, such deed shall be as effectual in law to pass all the right, title and interest of the wife, as if she had been an unmarried woman.” Here, then, it is expressly provided, that when the examination shall have been certified and delivered to the clerk. *318 &c., the deed shall he as effectual as if the maker were sole. The deed, then, is made to depend, not upon the truth, of the certificate, hut upon its existence, and delivery to the clerk; and if so, the enquiry whether it be true or false, is an immaterial enquiry.
It remains but to qualify the foregoing remarks by observing, that notwithstanding the conclusiveness of the certificate at law, the feme may be relieved in equity, where it has been obtained by the fraud of the party claiming under the deed. Such was the law as to fines, and such must doubtless be the law in reference to this substitute for the fine. Hothine: of that kind is pretended here; so that the deed, I think, stands unimpeached.
It may not be amiss, before concluding this opinion, to examine what are the common law principles applicable to the case. And here two enquiries present themselves; first, as to the authenticity attributed by the law to the act itself; and secondly, as to the competency of an officer of the law to unravel a solemn act done by himself in pursuance of its directions. After, a very diligent search, I have been unable to find a case in point, and am therefore compelled to resort to general principles and analogies. How, in relation to the act itself, it has been long the received doctrine, that where the law appoints any person for any specific purpose, it must trust him as far as he acts under its authority. Buffer’s N. P., 229. And it would seem, that “ where a written instrument is constituted by law the authentic and sole medium of proving a fact, oral testimony cannot be admitted to prove or disprove it;” and “where the law authorizes any person to make an enquiry of a judicial nature, and to register the proceedings, the written instrument so constructed, is the only legitimate medium to prove the result.” 3 Starkie on Evid., 1043,4. Thus, parol evidence cannot be received of the declaration *319 ■of a prisoner, taken under the statute of Philip & Mary, where the examination has, as required by the statute, been taken in writing; for it will be presumed that the magistrate, who has been entrusted by law to make a memorial of the confession, has acted in conformity with the statute. Id., part 4, p. 50, 1044. So, here, the law has entrusted to the justices to examine a feme- covert, touching the execution of a deed, to take her acknowledgment, and to certify their act to the clerk of the court, in order to its being recorded in perpetuum rei testimonium. It has vested them with the power of doing in pais, for the convenience of the parties, what regularly it is the province of a court to do. It has authorized them to take that privy examination which, in the levy of a fine, constituted part of a judicial proceeding, and never could be contradicted. It has empowered them to take and certify the examination and acknowledgment, which it also makes one •of the functions of its courts of justice, and thus appears to invest them with an authority judicial in its nature. But above all, it constitutes their certificate the authentic and the sole medium of proving that the feme covert has acknowledged the deed, with all the solemnities required by the statute. Ho other testimony can be admitted of the fact, and indeed, from the secret character of the proceeding, none other can exist as to the fact. And when to these considerations we add, that the very object of the privy examination and certificate is to complete, consummate and make final, the contract between the parties, it must be conceded, I think, that there can be no act in pais of the officers of the law, entitled to greater sanctity than thi,s. All the considerations which forbid the introduction of parol testimony to contradict the written contract of the parties, because it is presumed that what has been definitely agreed on is there set down, conspire with-the influence of other principles to protect this solemn *320 consummation of a contract, under the sanction of the* magistracy, from being rendered nugatory and void, after the lapse of years, by the slippery testimony of witnesses.
hi or is it a new principle in the law, to deem the certificates or returns of a public officer, in the execution of his duty, conclusive of the facts which they contain. Thus, the official return of an execution by' a sheriff, is usually conclusive between the litigating parties, though not as between them and himself; for-he is liable for his false return; as in this case the certifying justices may be liable for theirs. So, I presume, that when the clerk of a court has certified in his deed book, or upon a deed, that it was duly acknowledged by the parties thereto, the certificate is conclusive of the acknowledgment, and cannot he contradicted. By the same reason, the certificate of the-justices, who are equally trusted by the law, must beheld unassailable by the testimony of witnesses.
Still less consistent with reason or principle would it be, to permit the officer himself to unravel what he-has solemnly done. Can the clerk he permitted to* undo a deed acknowledged before him, after the purchaser has paid his money or fulfilled the consideration, by swearing that his certificate was false ? And' if the clerk cannot do so, upon what principle can the* justice? Upon what principle, in short, could the law permit a contract, closed and consummated by the act of the justice or the clerk, to he opened up and avoided by their testifying to their own official perfidy? I can-see none; nor do I perceive that we violate the principle of Jordaine v. Lashbrooke, 7 T. R., 601, in rejecting the testimony of the justices in this matter. Though a mere witness may be admitted to defeat his own attestation, it by no means follows that a public-officer should he permitted to defeat a solemn and. *321 public act, by contradicting Ms own certificate of tbe manner in wbicb be bas performed it.
On tbe whole, I am of opinion to affirm tbe decree in all things.
The other judges concurring, the decree was AEEIRMED.